# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED MOHMAND,<br><br>    *Plaintiff*,<br><br>v.<br><br>BROADCASTING BOARD OF GOVERNORS, *et al.*,<br><br>    *Defendants.* | Civil Action No. 17-618 (RDM) |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment, Dkt. 10. Plaintiff Mohammed Mohmand alleges that his employer, Broadcasting Board of Governors ("the Board"), discriminated against him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). He also alleges that the Board subjected him to a hostile work environment and retaliated against him for reporting the harassment. Mohmand's claims are mostly duplicative of those he raised in a previous action before this Court, which were dismissed in relevant part for his failure to exhaust administrative remedies. *See Achagzai v. Broad. Bd. of Governors* (*Achagzai I*), 170 F. Supp. 3d 164 (D.D.C. 2016). The Court concludes that Mohmand has again failed to exhaust his administrative remedies for most of the acts alleged in his complaint. With respect to the only incident Mohmand has properly exhausted—his May 9, 2016 schedule change—the Court holds that his allegations fail to state a claim for relief under any of his alleged theories of discrimination.

The Court will, accordingly, **GRANT** Defendants' motion to dismiss or, in the alternative, for summary judgment, Dkt. 10.

## I. BACKGROUND

### A. Factual Background

Plaintiff Mohammed Mohmand is a 70-year-old native Pashto and Dari speaker who has worked as an international broadcaster for the Pashto Language Service since 1985. Dkt. 1 at 3–4 (Compl. ¶¶ 6–9). At all times relevant to the complaint, Mohmand's official duties included conducting interviews, reporting on special events, writing and voicing programs, translating texts, and "other duties, as assigned." Dkt. 10-5 at 1. The Defendants in this action include the Board of Broadcasting Governors ("the Board"), an independent federal agency responsible for all non-military international broadcasting sponsored by the U.S. government, Dkt. 1 at 7 (Compl. ¶ 19), and Jeffrey Shell, the Chairman of the Board, Dkt. 1 at 1. The Board is responsible for Voice of America ("VOA"), which hosts the Pashto Language Service. *Id.*

In 2010, VOA's management decided to implement a programming change referred to as the "new format." *Id.* at 8 (Compl. ¶ 24). The crux of Mohmand's complaint is that under the "new format," younger employees were given favorable treatment while older employees, like Mohmand, were subjected to a laundry list of "hostilities and discriminatory acts" designed to "forc[e]" them "to leave the service." *Id.* at 4–5 (Compl. ¶¶ 12–13). Mohmand loosely groups his allegations—which span from 2010 to 2016—into four claims: age discrimination under Title VII (Count I); age discrimination in violation of the ADEA (Count II); unlawful retaliation in violation of the ADEA and Title VII (Count III); and hostile work environment. *See id.* at 7–10 (Compl.).

First, and most prominently, Mohmand alleges that VOA's management committed a discrete act of discrimination against him by instituting a schedule change on May 9, 2016, in

which "[he] was assigned production and plum assignments were given to junior staff." *Id.* at 8 (Compl. ¶ 27). Mohmand alleges that production was a "position for which he [was] not trained, and a position that [was] not part of his job." *Id.* at 8 (Compl. ¶ 13). He further alleges that this "biased schedule[] [was] used by [his supervisor] Mr. Ibrahim [Nassar] as a[n] . . . intentional, deliberate and discriminatory tool to serve his goal of forcing the seniors in the staff to leave the service." *Id.*

Second, Mohmand "re-alleges and incorporate[s] by reference" the above allegations in support of his claim that VOA's management "subjected him to intentional and unlawful ADEA retaliatory discrimination," *id.* at 9 (Compl. ¶ 29–30), and "adversely affected [his] employment opportunities in violation of Title VII," *id.* at 10 (Compl. ¶ 33).

Third, Mohmand alleges that VOA's management "subjected him to a hostile work environment" when he refused to leave his job. *Id.* at 4 (Compl. ¶ 12). His complaint lists a host of wrongdoings, including "failing to provide him with the proper equipment to perform his job;" "discussing his mistakes with his colleagues instead of with him;" and "excluding him from meetings." *Id.* at 4–5 (Compl. ¶ 13). In addition, Mohmand avers that, "[i]n order to escalate the hostile work environment," his supervisor, Mr. Ibrahim Nassar, required him to "produce [a] poetry show" on March 27, 2012—"without having trained [him]"— and then "humiliat[ed] and harass[ed]" him about his production skills." *Id.* at 6 (Compl. ¶ 17). Finally, Mohmand alleges that the May 9, 2016 schedule again relegated him to production even though Mr. Ibrahim Nassar "knew or should have known" that it would cause him "pain and suffering." *Id.* at 6 (Compl. ¶¶ 17–18).

Due to the "long term harassment," described above, Mohmand alleges that he has suffered "physical and psychological" harm, including difficulty sleeping and anxiety. *Id*. at 6 (Compl. ¶¶ 16, 18).

B.      **Procedural Background**

Mohmand met with an Equal Employment Opportunity ("EEO") counselor from the Board's Office of Civil Rights on May 18, 2016, and filed a formal complaint that same day. *See* Dkt. 10-3 at 1. Mohmand's EEO complaint alleges that his "managing editor . . . and upper management" have "harassed [him], retaliated against [him], [and] created a hostile work environment" since "2010 or so," resulting in him "suffer[ing] damages, sleep disorders, insomnia," and possibly, "Post Traumatic Stress Disorder." *Id.* at 2. The EEO complaint, however, mentions only one specific incident: Mohmand alleges that the May 9, 2016 schedule replaced "[his] responsibilities . . . with production"— "something in which [he has] [no] formal training" and is "outside [of his] formal job description." *Id.* at 2, 4. On April 6, 2017, Mohmand filed the present action, raising these same allegations. *See* Dkt. 1. There is no indication, based on the parties' submissions, that the agency rendered a decision before Mohmand filed suit.

In lieu of filing an answer, Defendants moved to dismiss Mohmand's complaint or, in the alternative, for summary judgment. Dkt. 10. In support of its motion, Defendants attached a statement of undisputed material facts, Dkt. 10-1; Mohmand's formal EEO complaint, Dkt. 10-3; Mohmand's responses to questions during the agency's preliminary investigation, Dkt. 10-4; and Mohmand's official job description, Dkt. 10-5. Mohmand timely filed an opposition, arguing that, "but for his age *and* national origin[,] he would not have been re-assigned [to] production," Dkt. 12-1 at 5 (emphasis added); and that the May 9, 2016 schedule change was intended to

4

retaliate against him for filing previous grievances, *id.* at 6.  He attached a statement of disputed facts, Dkt. 12-3, but failed to identify any portion of the record that supported his statements, as required by Local Rule 7(h).  Finally, Defendants filed a reply to Mohmand's opposition, attaching to it a response to Mohmand's statement of disputed facts, Dkt. 14-1, the May 2016 schedule for radio programming, Dkt. 14-2, Mohmand's answers to the EEO's preliminary questions, Dkt. 14-3, and an affidavit from Mohmand's supervisor, Ibrahim Nasar, Dkt. 14-4.

## II.  LEGAL STANDARD

Defendants move to dismiss Mohmand's complaint for failure to state a claim.  A defendant may prevail on a Rule 12(b)(6) motion only by demonstrating that the facts alleged in the complaint and accepted as true for purposes of resolving the motion do not warrant relief.  *See Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997).  If the Court concludes that the movant's arguments go beyond the pleadings and require consideration of facts not alleged in the complaint, the Court may either deny the motion on that ground or may, where appropriate and with reasonable notice to the parties, convert the motion to dismiss to one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).

Here, Defendants also move, in the alternative, for summary judgment under Rule 56.  The Court may grant summary judgment only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once it has carried that burden, the opposing party must then come forward with declarations or other evidence showing that there is

a genuine issue of material dispute for the trier of fact. *Grimes v. District of Columbia*, 794 F.3d 83, 94–95 (D.C. Cir. 2015).

### III. DISCUSSION

Defendants argue that Mohmand's claims fail for three reasons. First, Defendants assert that Mohmand has failed to state a claim for relief under Title VII because he alleges only age discrimination. Dkt. 10-2 at 8–9. Second, Defendants contend that Mohmand has failed to exhaust his claims, aside from his claim that Defendants violated the ADEA when it changed his schedule on May 9, 2016. *Id.* at 12–14. Third, and finally, Defendants argue that Mohmand's allegations about the schedule change are insufficient to state a claim for relief under any of his alleged theories discrimination: discrete discriminatory act, unlawful retaliation, or hostile work environment. *Id.* at 5–7, 14–17. The Court agrees with Defendants on all three bases for dismissal and will, accordingly, grant Defendants' motion to dismiss, or, in the alternative for summary judgment, Dkt. 10.

### A. Title VII Claims

Mohmand labels the first count in his complaint "Discrimination Under Title VII" and alleges that the Board "discriminated against [him] based on his age, in violation of Title VII." Dkt. 1 at 7 (Compl. ¶ 20). As Defendants note, however, Title VII prohibits discrimination based on an individual's "race, color, religion, sex, or national origin," but not based on an individual's age. 42 U.S.C. § 2000(e)-2(a); *see also* Dkt. 10-2 at 8. As a result, to the extent that Mohmand alleges discrimination on the basis of age (or retaliation for complaining about age discrimination) in violation of Title VII, his claims must fail. It is true that Mohmand alludes to national origin discrimination in his complaint, but he does so only vaguely and in passing and not in cause of action. *See* Dkt. 1 at 4 (Compl. ¶ 12) ("Plaintiff refused to succumb to the

hostilities and discriminatory acts based on his age and national origin."). He attempts to bolster this conclusory allegation in his opposition to the motion to dismiss. *See* Dkt 12-1 at 5 ("[B]ut for his age and national origin [Mohmand] would not have been re-assigned production."). These scattered references are insufficient. Mohmand is represented by counsel and Count I of his complaint is clear: it alleges only discrimination "based on [Mohmand's] age." Dkt. 1 at 7 (Compl. ¶ 20). Nor can the references to nationality contained in Mohmand's opposition brief rectify this shortcoming; it "is axiomatic that a party may not amend his complaint" in his briefing. *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 19 (D.D.C. 2018) (alterations omitted) (quoting *ACLU v. Trump*, 266 F. Supp. 3d 133, 142 n.5 (D.D.C. 2017)). In any event, had Mohmand properly alleged national-origin discrimination, his Title VII claims—which exactly overlap with his ADEA claims— would still fail for the reasons set forth below.

**B.     ADEA Claims**

  1.     *Administrative Exhaustion*

Under the ADEA, employees must timely exhaust administrative remedies before bringing an employment discrimination suit. *See Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012). There are two tracks for doing so: the employee can either "elect to follow [the] . . . procedures" that exist under Title VII, or can "take an alternative path to federal court" by "bringing [the] [age discrimination] claim directly . . . within 180 days of the allegedly discriminatory act," and "provid[ing] the EEOC with notice of . . . intent to sue at least 30 days before commencing suit." *Achagzai I*, 170 F. Supp. 3d at 172 (alteration in original) (quoting *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003)). Here, Mohmand does not allege that he followed the alternative track; thus, the Court will consider only whether he properly exhausted his claim pursuant to the procedures under Title VII.

7

Under that approach, which tracks the Title VII process, the employee first initiate the administrative process by notifying an EEO counselor within 45 days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). If the counselor cannot resolve the issue through mediation, she must notify the employee of her right to file an administrative complaint, triggering a 15-day window to do so. *See* § 1614.105(d). Any allegations that are not timely raised in the administrative process cannot form the basis for a subsequent suit. *See Mount v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014). Moreover, when an employee alleges that she was the victim of a discrete or discriminatory act, the timeliness inquiry focuses on that particular act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Importantly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in [a] timely" manner in the administrative process. *Id.* at 113. A separate inquiry, however, governs allegations of a hostile work environment because the nature of that claim "involves repeated conduct." *Id.* at 115. Under that inquiry, as long as one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability." *Id.* at 117.

Because the ADEA's exhaustion requirement is not jurisdictional, *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010), "the defendant bears the burden of pleading and proving" failure to exhaust as an affirmative defense. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Here, Defendants properly raised that defense, *see* Dkt. 10-2 at 8–10, and submitted a statement of undisputed material facts ("SUMF"), Dkt. 10-1, supported by citations to Mohmand's EEO complaint, Dkt. 10-3, and responses that he submitted to the EEO's investigation, Dkt. 10-4. It is undisputed that Mohmand initiated the EEO process on May 18, 2016. Dkt. 10-2 at 12. As such, he only timely exhausted "discrete retaliatory or

discriminatory act[s]" that occurred within 45 days of May 18, 2016—that is, conduct that occurred on or after April 3, 2016. *See Morgan*, 536 U.S. at 110. The only alleged incident identified in Mohmand's complaint that falls within this actionable window is the May 9, 2016 schedule change. Dkt. 1 at 6 (Compl. ¶ 18). The schedule change, moreover, is the only specific act mentioned in Mohmand's opposition brief. Dkt. 12-1. Accordingly, the Court will limit its analysis to claims that relate to that incident.

    2.    *Theories of Discrimination*

        a.    <u>Discrete Discrimination</u>

Mohmand alleges that the Board discriminated against him on the basis of his age in violation of the ADEA. "[T]he two essential elements of a discrimination claim" under the ADEA "are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In this context, "an adverse employment action [requires] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks and emphasis omitted). To survive a motion to dismiss, the allegations contained in the complaint must be sufficient to allow a reasonable trier of fact to find an objective, tangible harm—subjective injuries are not enough. *Id.* at 552–53. Although many workplace incidents may be upsetting to an employee, "not everything that makes an employee unhappy is an actionable adverse action." *Id*. at 552 (internal quotation marks omitted). Rather, to qualify as an "adverse employment action," the action must alter the terms or conditions of employment. *See Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 62 (2006).

9

Here, Mohmand alleges that the Board favored "younger, less experienced" staff by giving them the "plum assignments" in the new schedule change and relegating him to "production" because of his age.  Dkt. 1 at 8 (Compl. ¶ 27).  These allegations, however, lack specificity and, as alleged, do not rise to the level of an adverse employment action, and Mohmand's opposition to Defendants' motion does not offer any further basis to conclude that he has suffered an adverse employment action.  Mohmand has not plausibly alleged any specific reduction in supervisory duties, for example, nor any elevation of less qualified staff members to supervisory positions, nor any reduction in salary, pay grade, or benefits.  To the contrary, he makes only a passing allegation that he "was denied a promotion and pay for work that he performed."  Dkt. 1 at 11 (Compl. Damages).  But without any additional factual allegations or nexus to the May 9, 2016 schedule—the sole action properly before the Court—this conclusory statement simply "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, if anything, the May 2016 schedule, Dkt 14-2, actually undermines Mohmand's conclusory statement.  Far from establishing that he was demoted to "producer," the schedule shows that the international broadcasters rotated were assigned to various duties and, indeed, that Mohmand was assigned, on certain shifts, to be a reporter or an interviewer.  *Id.* at 2.  The Court cannot accordingly conclude, in the absence of evidence to the contrary, that Mohmand was stripped of any supervisory duties or demoted to a lower pay grade.  Dkt. 14-2 at 1–2.  Mohmand's principal complaint, moreover, appears to be that among similarly situated employees with the same job title, he was assigned duties that he found unpleasant.  Although this is an understandable grievance, the D.C. Circuit has cautioned that courts should not engage in "judicial micromanagement of business practices" by second-guessing employers' decisions about "which

of several qualified employees will work on a particular assignment." *Mungin v. Katten Munchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997).

Accordingly, the Court grants Defendants' motion with respect to Count II.

      b.      Unlawful Retaliation

Mohmand also alleges that the Board retaliated against him for filing grievances about the Board's allegedly discriminatory conduct. Dkt. 1 at 9 (Compl. ¶ 29). The ADEA prohibits an employer from subjecting employees to an adverse employment action for complaining of, or participating in investigations of, alleged discriminatory acts. 29 U.S.C. § 623(d). To prevail on a claim of unlawful retaliation under the ADEA, a plaintiff must show that (1) he engaged in activity protected by the ADEA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *See Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991).

Here, Mohmand baldly alleges that "[t]he Agency intentionally subjected [him] to intentional and unlawful ADEA retaliatory discrimination," and "re-alleges and incorporate[s] by reference the allegations" found in the rest of his complaint. Dkt. 1 at 9 (Compl. ¶¶ 29–30). Because the May 9, 2016 schedule change is the only incident that Mohmand has properly exhausted, however, the Court will consider only whether that schedule change, standing alone, is sufficient to state a claim for unlawful retaliation. The Court concludes that it is not.

Putting aside for the moment whether the schedule change rises to the level of a retaliatory act, the Court agrees with Defendants that Mohmand has failed to allege facts sufficient to show any "causal connection" between his "protected activity" (what the Court

presumes to be his 2012 complaint to HR about the new format and his 2014 lawsuit),[1] and the alleged "adverse action" (the May 9, 2016 schedule change). *Passer*, 935 F.2d at 331. Although judges in this circuit are of different minds about what facts a plaintiff must plead to allege a causal connection in support of a retaliation claim, *see Menoken v. McGettigan*, 273 F. Supp. 3d 188 (D.D.C. 2017), all agree that, at minimum, a plaintiff must allege "that he or she was subjected to an adverse action '*because of*' protected activity." *Id.* at 200–01 (emphasis added). Mohmand, however, never alleges that he was subjected to the May 9, 2016 schedule change "because of" his 2012 complaint or because of his 2014 law suit; in fact, he never identifies what protected activity he engaged in or what retaliatory act he suffered in his complaint. By any measure, that fails the pleading standard set forth in *Iqbal*, 556 U.S. at 678.

Even if the Court were to find that Mohmand did enough to allege that he was retaliated against for engaging in protected activity, he has not pled any facts to support that bare assertion. To be sure, the D.C. Circuit has recognized that in certain circumstances, "[t]emporal proximity can support an inference of causation." *Hamilton*, 666 at 1357 (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007); *see also* Menoken, 273 F. Supp. ed at 201. But here, the schedule change Mohmand complains of "is entirely too remote in time" from any possible protected activity the Court has identified. Dkt. 10-2 at 10. Nearly four years elapsed between Mohmand's 2012 complaint and his 2016 schedule change, and nearly two years elapsed between Mohmand's filing of suit before this Court and the schedule change. Moreover, in that

---

[1] Read charitably, Mohmand's complaint and brief in opposition allude to, but never expressly identify, two instances of protected activity. First, Mohmand's complaint alleges that "he filed a formal complaint with HR in May 2012." Dkt. 1 at 6 (Compl. ¶ 17); *see also* Dkt. 10-4 at 2–3 (Mohmand EEO Ans. ¶ 12) (noting that his supervisor, Mr. [Ibrahim] Nassar, was contacted about his complaint on August 13, 2012). Second, Mohmand's brief in opposition states that "[h]e complained to Human Resources in 2014" and "filed a federal claim with his colleagues" in *Achagzai I*. Dkt. 12-1 at 6.

intervening time, Mohmand's manager, Mr. Ibrahim Nasar, expressly told others *not* to assign Mohmand to production duties in response to his 2012 complaint. *See* Dkt. 1 at 6 (Compl. ¶ 17). Accordingly, the Court lacks any basis for inferring that Mohmand was retaliated because of any protected activity.

Accordingly, the Court will grant Defendants' motion with respect to Count III.

    c.    <u>Hostile Work Environment</u>

Finally, Mohmand alleges that the Board subjected him to a hostile work environment between 2010 and 2016. Dkt. 1 at 4–5, 11 (Compl. ¶¶ 13, 34). As the Court noted in *Achagzai I*, there is a high bar for "demonstrating a hostile work environment claim." 170 F. Supp. 3d at 183. "[A] plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id*. (quoting *Baloch*, 550 F.3d at 1191, 1201). Hence, "even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Id.* (quoting *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002)). This limit on hostile work environment claims avoids imposing "a general civility code" through federal civil rights statutes and "filter[s] out complaints attacking the ordinary tribulations of the workplace." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (internal quotation marks omitted)).

Although neither the D.C. Circuit nor the Supreme Court has yet decided whether "a hostile work environment claim can be brought under the ADEA," assuming it can be, "the same standard would apply." *Id.* (*quoting Ware v. Hyatt Corp*., 80 F. Supp. 3d 218, 227 (D.D.C. 2015)). "In determining whether an actionable hostile work environment claim exists," the Court must, moreover, "look to all the circumstances, including the frequency of the

13

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Morgan*, 536 U.S. at 116. The employer's "conduct must be extreme," and must be "both objectively and subjectively offensive," such "that a reasonable person would find" the conduct "hostile or abusive." *Faragher,* 524 U.S. at 787–88.

Most of Mohmand's allegations regarding a hostile work environment in this case involve the same shift to the "new format" raised in his previous suit. As this Court held there, conclusory allegations of "harassing" behavior that restate the legal standard for hostile work environment claims without offering supporting facts do not "satisfy the pleading requirements established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)." *Achagzai I*, 170 F. Supp. 3d at 184. Mohmand does describe some specific actions taken by the Board that allegedly contributed to a hostile work environment. These include an incident in 2012 in which his supervisor assigned him to produce a poetry show and then "stood over him to find fault in the way [he] was producing the show," Dkt. 1 at 6 (Compl. ¶ 17), and the May 9, 2016 schedule change, *id*. (Compl. ¶ 18). He also references a litany of workplace grievances that he alleges occurred between 2010 and 2016, including being provided insufficient equipment, being criticized in front of his coworkers, and being excluded from meetings. *Id.* at 4–5 (Compl. ¶ 13).

The Court concludes that these incidents are both too isolated and insufficiently severe to state a hostile work environment claim. *See Stewart*, 275 F.3d at 1134 ("[A] few isolated incidents of offensive conduct do not amount to actionable harassment."). To begin, "the sheer volume" of Mohmand's allegations carries no force: "A long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight." *Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015). The two discrete acts that Mohmand raises fair no better. *See*

14

*Barbour v. Browner*, 181 F. 3d 1342, 1348 (D.C. Cir. 1999) (holding that two incidents over two years, supplemented with conclusory statements regarding mildly harassing behavior, were insufficiently severe or pervasive to constitute a hostile work environment); *id.* (citing approvingly to cases in which other Courts of Appeals found no hostile working environment where plaintiffs alleged "five mild incidents of harassment over [a] 16 month period" and "two incidents over [a] three week period").

Although the D.C. Circuit has recognized that a single, sufficiently severe incident may suffice to create a hostile work environment, *see Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam), the events described by Mohmand do not come close to the level of severity required to state such a claim, *contra id.* at 579–80 (collecting cases in which plaintiffs were subjected to "physical assault," "sexual assault," "racially hostile graffiti that amounted to [a] death threat," "the use of several racial epithets and insults," and "a burning cross"). As such, the schedule changes that Mohmand describes, such as assigning him to production, Dkt. 1 at 4 (Compl. ¶ 13), and other workplace grievances that he identifies, are not sufficiently severe to support a claim for a hostile working environment.

Accordingly, the Court dismisses Mohmand's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss or, in the alternative, for summary judgment, Dkt. 10.

A separate order will issue.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: September 30, 2018